This is an appeal from a denial of a petition to modify a divorce decree.
Karen Jonita Burton Finkenbinder and Larry Eugene Burton were married in 1979 and lived together as husband and wife until about July 1982, when they were divorced. The divorce decree recited that one child, Joseph Andrew Burton, had been born of their marriage and incorporated the parties' agreement concerning custody and care of the child. Article V of their agreement provides in pertinent part as follows:
 "1. The parties have given serious consideration to the future welfare of their child and agree, subject to the further order of any court of competent jurisdiction, that the full care, custody and control of the parties' minor child, Joseph Andrew Burton, born July 29, 1980, shall be joint with the custody during the school year from September 1 to May 31 being in the Husband, and the custody during the summer months, June 1 through August 31, in the Wife. . . ."
Subsequent to this decree, Karen filed a petition to modify the decree as to custody, visitation rights, and support. The petition set forth as the main basis for the modification an allegedly long-held belief by Karen that the child was not Larry's, but was instead, the result of an adulterous affair she had with one Michael Finkenbinder. Michael and Karen were married on March 18, 1983. On that same day, Karen informed Larry, through her attorney, that Michael, not Larry, was Joseph's father. In support of her contention, the petition also indicated that tissue and blood-typing tests conducted at the University of Alabama Medical Center placed the probability of Michael's paternity at 97.1%.
On April 1, 1983, Michael filed a petition to intervene in Karen's petition to modify, seeking to be declared the child's father and have custody granted to Karen and himself. This petition was initially denied by the trial court. On appeal, however, this court held that Michael had a right to intervene, and the case was remanded to the trial court for a determination on the merits of both petitions. Finkenbinder v.Burton, 452 So.2d 880 (Ala.Civ.App. 1984). That decision may be looked to for a more complete rendition of the facts of this case.
In its order of January 29, 1985, the trial court denied the petition as to paternity and custody, but modified the original judgment as to visitation rights and child support. The Finkenbinders appeal.
Initially, we note that our earlier decision only allowed that Michael had standing to intervene in this action.Finkenbinder v. Burton, supra. It did not remove the extremely heavy burden of rebutting the presumption that the child, born during the marriage of Karen to Larry, is the legitimate son of Larry. See Leonard v. Leonard, 360 So.2d 710 (Ala. 1978); Curryv. Curry, 402 So.2d 1019 (Ala.Civ.App. 1981). Such presumption may only be rebutted by clear and convincing evidence which tends to show that it is naturally, physically, or scientifically impossible for the husband to be the father.Leonard v. Leonard, supra; Curry v. Curry, supra. See also
Alabama Uniform Parentage Act, § 26-17-1 to 21 (Cum.Supp. 1984). The trial court found that Michael had not met that burden. *Page 461 
While any competent evidence might have been used to meet that burden, Leonard v. Leonard, supra, the only evidence that Michael presented at trial was directed at proving the likelihood of his paternity, not at disproving the legal presumption that Larry is Joseph's father. In fact, the record clearly indicates that Larry could be the biological father. Testimony by the Finkenbinders' expert witness was to the effect that the blood test showed a possibility that Michael was not the father. Both Larry and Karen testified that they were having sexual relations at or during the estimated time of conception. Under the state of the evidence, the trial court was not in error in concluding that Michael failed to rebut the legal presumption that Joseph is Larry's legitimate son. Thus, in considering Karen's petition to modify, Michael may not be considered to be Joseph's father. Contrary to his argument, Michael cannot claim any superior right to Joseph's custody. Rather, Michael would himself be considered a third person, and Larry the father. See Sasser v. Thompson, 457 So.2d 422
(Ala.Civ.App. 1984); Thomas v. Griffin, 31 Ala. App. 500,19 So.2d 91 (1944). Karen's subsequent marriage to Michael can only be another factor for the trial court to consider in its determination of the petition to modify. See, e.g., Butler v.King, 437 So.2d 1300 (Ala.Civ.App. 1983).
We have discussed the aspect of the alleged parenthood of Michael as a prelude to the discussion of the issue of the denial of custody to the mother. It is to be noted that the denial by the trial court that Michael is the father of Joseph is not presented as an issue on appeal. The argument as to the right of custody of the child by Michael and Karen is presented as if the paternity of Michael was established. The fact is quite the contrary. Therefore the only real issue presented by this appeal is whether the court erred in denying a change of custody upon the petition of the mother.
The trial court's judgment was entered after an ore tenus hearing and is presumed correct. Davis v. Davis, 451 So.2d 316
(Ala.Civ.App. 1984). Such a judgment, if supported by competent evidence, will not be set aside, unless it is so palpably wrong as to amount to an abuse of discretion.
A decision regarding a modification of child custody rests within the sound discretion of the trial judge. Davis v. Davis,supra. The party seeking such a modification has the burden of proving two things. First, he must meet the threshold burden of showing a material change of circumstances since the last custody decree. See, e.g., Sasser v. Thompson, supra; Davis v.Davis, supra. While this change does not necessarily have to be adversely affecting the child, Ex parte McClendon,455 So.2d 863 (Ala. 1984), it must have such an effect on the welfare and best interests of the child as to necessitate the change sought. See, e.g., Sasser v. Thompson, supra; Davis v. Davis,supra. If such a change can be shown, the party must then demonstrate not only that he would be a fit parent, but that the proposed change of custody will materially promote the child's best interests and welfare so that the positive good brought about by the modification will more than offset the inherently disruptive effect caused by the change. Ex parteMcClendon, supra; Sasser v. Thompson, supra. Karen has failed to meet either of these burdens.
The only evidence of change that has been offered is Karen's subsequent marriage to Michael, Michael's alleged paternity, and the alleged stability of their new home. There has, however, been no evidence suggesting that these changes are affecting the child to such an extent as to necessitate a change. In fact, most testimony was to the contrary. Joseph seems to be handling the situation quite well, in spite of the fact that the adults upon which he must rely for both emotional and financial support seem determined to add some emotional disturbance to his young life. There was much testimony indicating that an emotional pinball game is being played, with Joseph being the ball. This testimony was so persuasive that it led the child's appointed guardian ad litem to recommend *Page 462 
that custody remain with Larry just so as not to add to the disruption and confusion. We must concur with that recommendation.
In summary, we can find no abuse of discretion in the trial court's denial of Karen's petition to modify, as she did not meet the burdens of showing both a material change of circumstances necessitating a modification and that such modification would promote the best interests of the child. In view of the continuing child support obligation of the mother, we deny attorney fees to the father.
AFFIRMED.
BRADLEY and HOLMES, JJ., concur.